IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CURTIS LEE ASBERRY,
        Plaintiff,

vs.                                                  Case No: 3:09cv502/LC/MD

ARNP NICHOLS, et al.,
        Defendants.

## REPORT AND RECOMMENDATION

Plaintiff has paid the initial partial filing fee (doc. 7), and this cause is before the court upon his *pro se* civil rights complaint filed pursuant to 42 U.S.C. § 1983 (doc. 1). Upon review of the complaint, the court concludes that plaintiff has not presented an actionable claim and that dismissal of this case is warranted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was an inmate of the Florida penal system confined at Santa Rosa Correctional Institution ("Santa Rosa CI") at the time he initiated this action. (Doc. 1, p. 2). He has since been released. (Doc. 8). His complaint names four defendants, all prison officials at Santa Rosa CI: Assistant Registered Nurse Practitioner Nichols, Chief Health Administrator Taylor, Dr. Rummel, and Assistant Warden Haas. Plaintiff alleges that he has a medical condition, which he does not specify. He states that upon his commitment to the Florida Department of Corrections, he was received into the Reception and Medical Center where he met with a doctor. After plaintiff described his medical condition, the doctor issued him medical passes providing for particular restrictions (which plaintiff does not

describe). Thereafter, plaintiff was transferred to Santa Rosa CI, where he had an initial medical assessment with defendant Nichols. Plaintiff complains that after listening to plaintiff's description of his condition and reviewing his file and related medical passes, defendant Nichols altered the restrictions on his passes and issued him a new pass. (Doc. 1, p. 8 in ECF). A short time later, plaintiff began his work assignment pulling food carts from food service to the compound. After pulling his first cart, he became light-headed, started perspiring and passed out. He regained consciousness a short time later, and medical staff arrived. While treating plaintiff, one of the nurses noted that his blood pressure was extremely low. Plaintiff was taken by wheelchair to the medical department, where he stayed until his blood pressure returned to normal. (*Id.*, p. 9 in ECF). An hour or two after his discharge, plaintiff was called back to food service to pull food carts for lunch. Plaintiff advised a Mrs. Bennet that he was the inmate who passed out. The gate officer advised plaintiff that unless he obtained a "no cart pulling pass" from the nurse, he could not be excused from pulling carts and would risk disciplinary action if he failed to perform the work. (*Id.*, p. 10 in ECF). Plaintiff submitted an inmate request to defendant Nichols that he be issued a no cart pulling pass, advising her that when he pulled carts he experienced shortness of breath, chest pains, blue vision, weakening of his legs and body spasms. Defendant Nichols denied the pass. (*Id.*, p. 11; *see also* Inmate Request at p. 16 in ECF). Plaintiff submitted an informal grievance to defendant Taylor, but Taylor referred plaintiff back to defendant Nichols. (*Id.*, p. 11; *see also* Informal Grievance at p. 17 in ECF). Plaintiff then filed a formal grievance with defendant Haas, which was denied. (*Id.*, p. 11; *see also* Formal Grievance at pp. 24-25 in ECF). Plaintiff did not appeal to the Office of the Secretary. (*Id.*, p. 4 in ECF). Based on the foregoing, plaintiff claims the defendants were deliberately indifferent to his serious medical condition, in violation of the Eighth Amendment. (*Id.*, pp. 13-14 in ECF). As relief, he seeks punitive damages in the amount of $1 million.

## DISCUSSION

Since plaintiff is proceeding *in forma pauperis*, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *Id.* at 327, 109 S.Ct. at 1833, or when the claims rely on factual allegations that are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). In determining whether the complaint states a claim upon which relief may be granted, the court accepts all the factual allegations in the complaint as true and evaluates all inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1968-69, 1974, 167 L.Ed.2d 929 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). A complaint is also subject to dismissal under Rule 12(b)(6) when its allegations--on their face--show that an affirmative defense bars recovery on the claim. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).

In the instant case, the allegations of the complaint establish that the exhaustion defense (the affirmative defense of failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a)) bars recovery on plaintiff's claims. Title 42 U.S.C. § 1997e provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[1] Exhaustion of all available administrative remedies is mandatory, and is a pre-condition to suit. *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *see also Porter v. Nussle*, 534 U.S. 516, 524-25, 122 S.Ct. 983, 988, 152 L.Ed.2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 534 U.S. at 524, 122 S.Ct. 983. Exhaustion is required

---

[1]The purpose of this exhaustion requirement is to reduce the quantity and improve the quality of prisoner suits. *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). In *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998), the Eleventh Circuit noted the following seven policy reasons favoring exhaustion:

(1) to avoid premature interruption of the administrative process;
(2) to let the agency develop the necessary factual background upon which decisions should be based;
(3) to permit the agency to exercise its discretion or apply its expertise;
(4) to improve the efficiency of the administrative process;
(5) to conserve scarce judicial resources;
(6) to give the agency a chance to discover and correct its own errors; and
(7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

*Id.* at 1327 (quoting *Kobleur v. Group Hospitalization and Med. Servs., Inc.*, 954 F.2d 705, 712 (11th Cir. 1992)).

*Case No: 3:09cv502/LC/MD*

whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth, supra* at 734, 121 S.Ct. at 1825. The requirement is not subject to waiver by a court or futility or inadequacy exceptions. *See Booth, supra* at 741 n. 6; *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998). Moreover, the PLRA requires "proper exhaustion," so that the agency addresses the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2387-88, 165 L.Ed.2d 368 (2006); *see also id.*, 126 S.Ct. at 2388 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").

The Florida Department of Corrections ("DOC") provides a three-level administrative grievance procedure for prisoner complaints. To initiate the process, an inmate must submit an informal grievance. *See* FLA. ADMIN. CODE r. 33-103.005. If dissatisfied with the response, the prisoner must submit a formal grievance. FLA. ADMIN. CODE r. 33-103.006. If dissatisfied with that response, the prisoner must submit an appeal to the Office of the Secretary. FLA. ADMIN. CODE r. 33-103.007(1).

The allegations of, and attachments to the instant complaint establish the steps plaintiff took to exhaust his administrative remedies. He filed informal and formal grievances, but admits that he did not submit an appeal to the Office of the Secretary, explaining, "because of a sensitive nature." (*Id.*, p. 4 in ECF). Although the DOC regulations allow inmates with a grievance of a sensitive nature to bypass the informal and formal grievance steps by filing a direct grievance with the Office of the Secretary (central office), FLA. ADMIN. CODE r. 33-103.006(3)(d), and r. 33-103.007(6), the rules do not allow an inmate to bypass the central office level. An appeal to the Office of the Secretary was required for plaintiff to properly exhaust his administrative remedies.

The Supreme Court in *Woodford* determined that proper exhaustion means that a prisoner must complete the administrative review process in accordance with the applicable procedural rules as a precondition to bringing suit in federal court. 126 S.Ct. 2387-88. The Court further explained "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [prior to seeking relief from a federal court] because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 2386. "Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." *Id.* at 2387. Consequently, a prisoner cannot "proceed . . . to federal court" after bypassing available administrative remedies, either by failing to properly exhaust administrative remedies or waiting until such remedies are no longer available, as allowing federal review under these circumstances would impose "no significant sanction" on the prisoner and "the PLRA did not create such a toothless scheme." *Id*. at 2388; *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA). This interpretation of the PLRA's exhaustion requirement "carries a sanction" for noncompliance and avoids "mak[ing] the PLRA exhaustion scheme wholly ineffective." *Woodford*, 126 S.Ct. at 2388. Further, the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure. *See Booth*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Cox v. Mayer*, 332 F.3d 422, 424-28 (6th Cir. 2003) (holding that the exhaustion requirement applies to a former prisoner who filed his complaint while incarcerated without exhausting his administrative remedies and who had

since been released from custody); *see also Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999).

Because proper exhaustion is a pre-condition to suit and because plaintiff failed to properly exhaust his administrative remedies with respect to his claims, the court must dismiss his complaint.

Accordingly, it is respectfully RECOMMENDED:

That this cause be DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii), and the clerk be directed to close the file.

At Pensacola, Florida, this 25th day of February, 2010.

/s/ *Miles Davis*
       MILES DAVIS
       UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**